# SULLIVAN,

## FERNALD *v.* NOYES.

An application to take the oath prescribed for the relief of debtors in execution, is sufficient, if it state the facts necessary to be stated, and contain a petition for the relief provided, in intelligible terms, although the word "oath" be omitted.

The order of the justices, appointing the time and place for hearing such a petition, is not required to be signed by them before issuing a certified copy of the petition and order for service upon the creditor.

A service of a copy of the petition and order upon one of the attorneys of the plaintiff, in the original action, is sufficient, where the appearance was by two, acting in partnership.

The justices may adjourn the hearing to a different place from that at which the hearing is commenced.

DEBT, upon a bond, dated the 18th day of January, 1851, the condition of which was that one William T. Noyes, then a prisoner at the suit of said Fernald, should, within one year from the date thereof, apply to the proper authority and be admitted to take, and actually take, the oath or affirmation prescribed by law for the relief of poor debtors, or in default thereof should surrender himself to prison, as prescribed by law.

The writ was dated February 10th, 1852.

The general issue was pleaded, with a brief statement, setting forth that the condition of said bond has been fully performed; that said William T. Noyes, within one year

from the date of said bond, applied to the proper authority, was admitted to take, and, on due and legal notice to the attorney of said Fernald, did actually take the oath prescribed by law for the relief of poor debtors.

The said issue was joined by the plaintiff, and the allegations set forth in the defendant's brief statement were denied by the plaintiff.

On the 8th day of December, 1851, the said William T. Noyes made an application to take the poor debtor's oath, and certified copies of the petition and order of notice were as follows:

" To John J. Prentiss and Thomas J. Harris, justices of the peace and of the quorum for the county of Sullivan.

Shows William T. Noyes of Claremont, in the county of Sullivan and State of New Hampshire, that on the 18th day of January, A. D. 1851, he was arrested by a deputy sheriff of said county of Sullivan, upon an execution recovered by William R. Fernald of Boston, in the county of Suffolk and Commonwealth of Massachusetts, and gave bond, as provided by law, that he had not, at the time of his arrest, nor at any time afterwards, estate to the value of twenty dollars, excepting goods and chattels by law exempted from attachment.

He, therefore, prays to be admitted to take the prescribed by the 200th chapter of the Revised Statutes.

W. T. NOYES.

Dated at Claremont, December 8th, 1851.

Sullivan, ss. Claremont, December 8th, A. D. 1851. Upon the application aforesaid, it is ordered that the said debtor give notice to the said creditor, or to James M. Gates, Esquire, of Claremont aforesaid, his attorney, to appear at the office of John J. Prentiss, in Claremont, in said county, on the first day of January next, at one of the clock in the afternoon, to show cause, if any he have, why the

said William T. Noyes should not be admitted to take said oath, by giving to the said creditor, or to the said James M. Gates, his attorney, or leaving at his usual place of abode, or at the usual place of abode of his attorney aforesaid, a copy of the said application, with a copy of this order thereon, at least fifteen days previous to the said first day of January next.

> *Justices of the peace*
> *and of the quorum.*

We certify that the above is a true copy of the original application and order thereon.

JOHN J. PRENTISS,  } *Justices of the peace*
THOS. J. HARRIS,   } *and of the quorum.*"

The copy left with James M. Gates, alleged by the defendant to have been the plaintiff's attorney, was like the foregoing, except that the word "oath" was inserted in the blank, and the names of the justices of the peace and quorum were affixed to the order.

The hearing on the petition was adjourned to the 3d day of January, A. D. 1852, at nine o'clock, A. M., at the office of A. B. Williamson, in Claremont, and the certificate of the oath was as follows:

" STATE OF NEW HAMPSHIRE.

Sullivan, ss.

On the third day of January, A. D. 1852, at nine o'clock in the forenoon, at the office of A. B. Williamson, in Claremont, in said county, William T. Noyes of Claremont, in said county, heretofore a prisoner at the suit of William R. Fernald of Boston, in the county of Suffolk and Commonwealth of Massachusetts, took the oath prescribed by law for the relief of poor debtors; the attorney of the

said William R. Fernald, (James M. Gates, Esq.,) having
been duly notified, did not attend.

Before   John J. Prentiss,  } *Justices of the peace*
      Thos. J. Harris,  } *and of the quorum."*

The original suit was instituted and prosecuted to final
judgment by said Gates and Samuel W. Fuller, then part-
ners, doing business in the name of Gates & Fuller, and
said bond, the due execution of which was admitted by the
defendant, was also approved by them as the attorneys of
said Fernald, who then was, and ever since has been, a resi-
dent in Boston, Massachusetts.

Prior to the 8th day of December, 1851, the co-partner-
ship of Gates & Fuller had been dissolved, and said Fuller
was settled in business in the State of Illinois.

The defendant alleged that he could prove that after said
notice was given to said Gates as aforesaid, and before the
hearing before said justices, said Gates told A. B. William-
son, who was attorney for said William T. Noyes, that he
(said Gates) had received a letter from his client (said Fer-
nald) that he should not appear before said justices at said
hearing, and should make no objection to said William T.
Noyes taking the poor debtor's oath.  All this, however,
was denied by the plaintiff, who said he could prove by said
Gates that no such conversation ever took place.

Such judgment is to be rendered as the foregoing facts
will warrant.

*J. M. Gates,* for the plaintiff.

Upon the case' stated, the plaintiff is entitled to recover.

Four objections suggest themselves to the validity of the
proceedings under which it was claimed that William T.
Noyes was discharged.

1.  The omission of any prayer, in the application of
William T. Noyes, to be admitted to take the oath pre-
scribed by the statute.

The statute authorizes an application praying to be admitted to take the oath, &c., and there is no such prayer, in express terms, in the application. Unless the court can understand, as a necessary inference, what is actually set down to be, substantially, a prayer to be permitted to take the oath, this objection must avail.

It may be urged that the reference to the 200th chapter of the Revised Statutes is sufficient, and that the omission of the word oath is immaterial. If so, it will be for the defendant to state satisfactory reasons why an application to take the         prescribed by the 200th chapter of the Revised Statutes, necessarily or substantially means to take the *oath*, instead of taking the *discharge*, prescribed by that statute.

2. The notice which was attempted to be given was addressed to James M. Gates, as attorney of the creditor, and the service was upon him. There is nothing to show Gates to have been the plaintiff's attorney at that time, or that such an order or service could be lawfully served on him, except that Gates & Fuller, as partners, commenced and prosecuted to judgment the original suit. This did not constitute Gates alone the attorney for Fernald.

It will not be pretended that, before the dissolution of the partnership of Gates & Fuller, a notice, addressed to Gates alone, would have been sufficient. The dissolution of the firm did not necessarily change the relation of Gates & Fuller to the plaintiff. It could not do it. Still less did the removal of Fuller affect that relation. Unless Fuller's relation as attorney was terminated in some other way, it still continued.

There is nothing to show that Fuller was in any way discharged from his responsibility as one of the attorneys of the plaintiff. We say, then, if the debtor undertook to notify the attorneys, the notice should have issued to Gates & Fuller; and if Fuller could not be found, the leaving of a

copy at his last and usual place of abode in this county, might have been sufficient.

3. There was no order of notice made by the justices, or either of them, of which a copy was served in pursuance of the statute. The paper upon which Silas E. Noyes made his return, as it now stands, shows an order. If that was so made originally, as it must be supposed to have been, a copy of it was not served on Gates. The signature of the justices, or one of them, is an essential part of the order. It is the only thing which authenticates it, and makes it an order. The paper is, in fact and in law, no order without such signature, and the alleged copy of an order was no copy for want of the name affixed to the original.

If it be supposed that no names were put to the original until after the service, and that they were then added, that will not cure the defect. The paper left, in that case, would have been a copy when it was left, but not a copy of an order, because, for want of the signatures, no order had been made. The certificate of the justices " that the above is a true copy of the original application and order," cannot cure the defect, for that will not make it a copy, if it was not a copy, nor make it an order, if it was not an order, for want of authentication; so that whether the paper which issued, purporting to be an order, was issued or not issued, when the service was made, this objection must be fatal. If not issued, then no order had been made. If issued, then no copy of it was left. We are unable to perceive in what way this objection can be answered.

In *Shinner & a.* v. *McDaniel & a.*, 5 Vermont Rep. 539, Mr. Justice *Williams* lays down the broad principle, " that where a record is required to be made, or a copy to be left or delivered, and the record or copy is made operative either to pass or create a title, or for the purpose of notice to affect another, and lay upon him duties to be performed, or as a notice on which after proceedings are to be had, or as a notice of title; if the record or copy contains such defects as

would render the original from which the record or copy was taken void, if it contains the same defects, then it may be considered that no record has been made or copy delivered.    Those who are to be affected by the notice to be derived from such record or copy, may consider the original as similar to the record or copy, and, therefore, treat it as void."    The rule there laid down, the soundness of which is deemed to be unquestionable, would seem to settle this case.

4.    It appears that the oath was not taken on the day and at the place mentioned in the notice.    It is said that there was an adjournment, but by whom made, and when, and for what cause, does not appear.    There is nothing to show that the parties, or either of them, were present at the time and place, or that any regular adjournment ever took place; and it is contended that there should be a good cause for adjournments in such cases, and that the reasons should be set forth by the justices, in the certificates of their proceedings.    It is also contended that no adjournment could have been made to a different place from that stated in the notice.

The case of *Banks & a.* v. *Johnson & a.,* 12 N. H. Rep. 445, fully sustains our view of this case.    We deem it unnecessary to refer the court to any other authorities.

·    *Snow,* for the defendant.

The defendant insists that he is entitled to judgment, and answers the several objections of the plaintiff as follows :

I.    The first objection of the plaintiff to the validity of the proceedings which constituted a performance of the condition of the bond in suit, has no foundation in fact. The application of William T. Noyes was in due form; the word " oath " was not omitted.

II.    There cannot be any weight to the second objection of the plaintiff.    Before the application of William T. Noyes

was made on the 8th day of December, 1851, the firm of Gates & Fuller had been dissolved, and Mr. Fuller was permanently settled in business in the State of Illinois. Under such circumstances, the notice to Mr. Gates was sufficient. It was enough that Mr. Gates was the attorney of the plaintiff in the original suit. *Priest* v. *Tarlton & a.*, 3 N. H. Rep. 95; Rev. Stat. ch. 200, § 2. It is supposed that there could have been no question as to the sufficiency of the notice, even if Mr. Fuller had been in partnership with Mr. Gates, at the time the notice was given.

III. The third objection urged by the plaintiff seems to be the only one of importance.

In the copy left with the creditor's attorney, the justices' signatures to the order, and the word " oath," where it is first used in the application, were accidentally omitted, and the defendant contends—

1. That these are slight clerical errors, which would no more have misled the creditor than the omission to dot an *i*, or cross a *t*, which were dotted and crossed in the original, and that the statute has been reasonably and substantially complied with. The true rule, in this case, is laid down in *Peck* v. *Wilson*, 14 N. H. Rep. 590, and *Osgood* v. *Hutchins*, 6 N. H. Rep. 381, which is that where there is no ground for mistake or misapprehension on the part of the creditor, the proceedings will not be held invalid.

2. That the certificate of the justices, that the attorney of the creditor was duly notified, is *prima facie* evidence of that fact, ( *Woods* v. *Blodgett*, 15 N. H. Rep. 569, and former cases,) and the facts shown on the part of the plaintiff do not rebut that evidence.

3. That the copy left with the creditor's attorney was furnished and certified by the justices, and their certificate to the truth thereof, is conclusive between these parties. The justices alone had the possession of the originals, and they were the only proper persons to make out and certify copies. The debtor left such a copy as they certified to be

a true copy, and this is all he should be required to do. If the justices have committed an error, and the plaintiff has sustained an injury thereby, the defendant ought not to be responsible for it.

IV. Chapter 200, § 3 of the Revised Statutes provides that " said justices, or either of them, on receiving satisfactory evidence that due notice has been given to the creditor, may adjourn the hearing on said petition not exceeding ten days." The justices, in this case, did receive satisfactory evidence that notice had been given to the creditor, in the affidavit made on the 13th of December, 1851, and had authority to adjourn.

In their record they say, " The hearing on the within petition is adjourned," &c., and this order is signed by them. Now if the hearing was legally adjourned, the justices were present at the time and place mentioned in the order of notice. It is reasonable and proper that justices should have the power to adjourn to a different place as well as a different time, and such, it is supposed, is the law as laid down in *Banks* v. *Johnson*, 12 N. H. Rep. 453.

In this case, the plaintiff is attempting to obtain a large sum of money of the defendant, as surety of the poor debtor, not on the ground that he has been injured by any of the petty errors that he has pointed out, but because " the bitter letter of the statute " read according to his own sense, gives it to him. He is insisting upon the " pound of flesh," and he should show clearly that the " bond " gives it to him.

Woods, C. J. The Revised Statutes, ch. 200, § 1, provides that any one imprisoned on execution, or who has given bonds pursuant to law, may apply to any two justices of the peace and quorum, by petition, setting forth that he had not at the time of his arrest, or at any time afterwards, estate of the value of twenty dollars, &c., and praying to be permitted to take the oath thereinafter prescribed. The chapter further provides (§ 2) that the justices may make an

Fernald *v.* Noyes.

order, on such application, appointing a time and place for hearing and considering the application; and the debtor shall cause the creditor, or his attorney, to be served with a copy of such application and order of notice thereon.

The first question arising upon the case is, whether such an application as is required by the statute was made. And upon reading the copy certified by the justices, we have no doubt such an application was made. The petition sets forth, in substance, the facts required to be set forth, and the only question made by counsel is, whether the debtor prayed to be admitted to take the oath prescribed. No form of words is pointed out by the statute, nor does it in terms require, although it may, perhaps, fairly be inferred, that the petition must be in writing. It is, undoubtedly, a sufficient compliance with the statute, if the debtor present to the justices a written statement of the necessary facts entitling him to the benefit of the oath, and containing apt words to indicate the wish of the applicant to be admitted to that benefit. If the word oath be omitted, and yet supplied by some other expression, by which the request of the applicant may be apprehended, it cannot reasonably be doubted that the application would be sufficient. We think that enough is contained in this application for that purpose, and that no one reading it, who could have understood it without the omission, could fail to understand it, notwithstanding the omission.

The statute further requires that the justices make an order, appointing a time and place for considering the application, and that the debtor cause a copy of the application and order to be secured upon the creditor or his attorney. This order seems to have been made, but it is said it was not signed, and that the supposed copy which was served, bearing the signatures of the justices, was so far a deviation as to vitiate the service.

The statute does not require the order to be signed by the magistrates, and if it did, there seems no objection to

Fernald *v.* Noyes.

the correction and enlargement of the record, in this or any other particular, at any time, so far as it may be necessary to put it in form, and so far as may be consistent with the entry actually made.

The copy was served upon Mr. Gates, who was one of the two attorneys retained by the creditor in the original cause. The statute does not require that service should be made upon all the attorneys that may happen to be engaged, and the fact that the two gentlemen who appeared for the plaintiff commonly acted together in conducting causes in court, does not devolve upon the other party any other burdens than would otherwise attach to them by law or the practice of courts. When notice is required to be given to the attorney of a party, it may be given to any one of any number who may have actually appeared for him. The law was fully complied with, in this case, and the exceptions as to the notice must be overruled.

The power to " adjourn " is expressly conferred by the statute upon the justices, in cases like the present. Although in strictness of etymology, that may not embrace the changing the *place* as well as time of the proceeding, yet by common usage and intendment, it has the larger meaning. Comp. Stat. ch. 182, § 5.

Upon the whole, we are of opinion that there must be

*Judgment for the defendant.*